

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

March 27, 2023

**BY ECF**
Hon. Vincent L. Briccetti
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

        Re:   *Lost Lake Holdings LLC et al. v. Town of Forestburgh et al.*,
               22 Civ. 10656 (VLB)

Dear Judge Briccetti:

       The United States respectfully submits this letter Statement of Interest pursuant to 28 U.S.C. § 517, in response to the Court's Order of March 13, 2023, directing counsel for Lost Lake Holdings LLC and Mishconos Mazah LLC ("Plaintiffs") to respond to the ripeness and standing arguments in the motion to dismiss filed on March 9, 2023, by the Town of Forestburgh, with other governmental and individual defendants ("Defendants").

       Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any . . . district in the United States to attend to the interest of the United States in a suit pending in a court of the United States." The United States has an interest in this matter, which alleges claims, *inter alia*, under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (the "FHA"). The United States enforces the FHA and litigates cases involving allegations of discrimination similar to those alleged here, under both the FHA and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-2 ("RLUIPA"). *See, e.g., United States v. Village of Airmont*, 20 Civ. 10121 (NSR) (AEK) (RLUIPA); *LeBlanc-Sternberg v. Fletcher*, 104 F.3d 355 (2d Cir. 1996) (FHA).

       Plaintiffs allege violations of the FHA, 42 U.S.C. § 3604(a), § 3604(b), and § 3617, in the first three claims of the Complaint. (Comp. ¶¶ 477-482.) Defendants' motion seeks dismissal of this action in its entirety, but makes only passing reference to the FHA, in a footnote. *See* Defendants' Memo of Law ("Mem.") at 8, n.6. The United States takes no position on any other claim.

**I.    The Allegations of the Complaint**

       A court must, on a motion to dismiss, assume the truth of the well-pleaded allegations of the Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555 (2007)). The United States takes no position as to whether the following allegations in Plaintiffs' Complaint are true or not.

Letter to Hon. Vincent L. Briccetti
March 27, 2023
Page 2 of 5

      The property at issue is a site in Forestburgh that measures about 3.3 square miles. In 2008, a developer purchased the site, and sought the Town Board's approval to rezone the site as a Planned Development District ("PDD"). The Town Board approved the rezoning in 2011 and approved a project consisting of 2,627 residential units to proceed in seven phases. (Comp. ¶¶ 30-51.) In 2012 and 2013, the Board granted all necessary approvals to proceed with Phase 1. (*Id.* ¶¶ 56-63.) The original developer struggled to develop the property, so in July 2020, Plaintiffs purchased the property, prompting anti-Hasidic comments in response to news articles and on social media. (*Id.* ¶¶ 102-08.) The principals of both Plaintiff corporations are Hasidic Orthodox Jews (*id.* ¶ 2), a fact known to nearby residents and Town officials. (*Id.* ¶¶ 165-166.) Shortly after the Town and its residents learned that Hasidic Orthodox Jews might purchase homes on the property, the Defendants engaged in a "series of violations . . . in order to prevent Plaintiffs from ever developing Lost Lake and selling homes to Hasidic Orthodox Jewish buyers." (*Id.* ¶ 6.) For example, Defendants increased the per lot fees associated with parks, increased tax assessments, and imposed numerous costly delays. (*Id.* ¶¶ 142-150, 169-255, 429-443, 468.) Defendants also denied Plaintiffs' applications for building permits for pretextual reasons, which completely halted the project. (*Id.* ¶¶ 6, 169-254.) Plaintiffs appealed these denials to the Forestburgh Zoning Board of Appeals ("ZBA") in January 2022. (*Id.* ¶ 255.) These events prompted additional anti-Hasidic comments on social media. (*Id.* ¶¶ 256-263, 312-14.) On November 16, 2022, after numerous "unfair" and "sham" proceedings, the ZBA denied Plaintiffs' applications for building permits on the grounds that "offering reasonably priced and affordable units to Hasidic Jewish families" was "inconsistent with the project approvals." (*Id.* ¶¶ 6, 314-378, 407-411.) Plaintiffs allege that their building applications are, in fact, consistent with the initial approvals for the PDD and that the ZBA's reasons for the denial are discriminatory. (*Id.* ¶¶ 133, 169, 218, 220, 228, 232, 236, 248-51, 377-425.)

## II.    Plaintiffs' Claims Under the FHA Are Ripe

      The allegations of the Complaint, taken as true, state a ripe claim under the FHA. The purpose of the ripeness doctrine is "to avoid entangling [the Court] in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 293 (2d Cir. 2022) (citation omitted). Under *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), a land use claim is ripe when "the government entity charged with implementing the relevant regulations has reached a 'final decision' regarding their application to the property at issue" that "inflict[s] an actual, concrete injury." *Sayville,* 43 F.4th at 294, 298 (quoting *Williamson*). Here, there is no "abstract disagreement"; Plaintiffs allege that the Town's decision-making body, the ZBA, has rendered a "final decision" on their application, "prevent[ing] them from building sorely needed homes" and causing "significant financial damages" including "lost profits and asset value" and "lost homes sales," thus inflicting a "concrete injury." (Comp. ¶¶ 461-70.)

      Defendants argue that Plaintiffs' claims are not ripe because they did not "exhaust[] all avenues of review available to them" (Mem. at 6), by not pursing an Article 78 appeal in state court, seeking a variance, or requesting "review or further consideration from the Town Board." (Mem. at 4, 8, 14.) None of these contentions have merit. First, the finality doctrine does not require Plaintiffs to submit a *variance* application, but rather to "submit[] at least *one meaningful application* to the relevant municipal entity." *Sayville*, 43 F.4th at 296 (quoting *Murphy v. New*

*Milford Zoning Comm.*, 402 F.3d 342, 348 (2d Cir. 2005)) (emphasis added); *see also Woodfield Equities, L.L.C. v. Inc. Vill. of Patchogue*, 357 F. Supp. 2d 622, 632 (E.D.N.Y.), *aff'd*, 156 F. App'x 389 (2d Cir. 2005) ("[T]he submission of at least one purposeful application that is subsequently denied, meets the finality requirement."). Defendants' reliance on *Murphy* on this point is unavailing. (*See* Mem. at 8.) In *Murphy*, the court found ripeness wanting because the plaintiffs, after receiving a letter from the town's zoning commission informing them that their religious gatherings violated the local zoning ordinance, went straight to federal court rather than "appeal[ing] to a zoning board of appeals or seeking a variance." *Murphy*, 402 F.3d at 349. Without either an appeal or a variance application, the court was "depriv[ed] . . . of any certainty as to what use of the Murphys' property would be permitted." *Id.* at 353.

Here, Plaintiffs have alleged what the court in *Murphy* found lacking: an appeal to the ZBA, which issued a final decision that Plaintiffs could not develop the land. After numerous hearings and testimony, the ZBA issued a lengthy opinion denying Plaintiffs' appeal, finding that their building permit applications and plan to "offer[] reasonably priced and affordable units to Hasidic Jewish families" was inconsistent with the PDD. (Comp. ¶¶ 378-425.) The ZBA's denial is a "conclusive determination" from a local authority that Plaintiffs may not "develop the subdivision in the manner [they] proposed." *Williamson*, 473 U.S. at 193; *see also Bikur Cholim, Inc. v. Vill. of Suffern*, 664 F. Supp. 2d 267, 275 (S.D.N.Y. 2009) ("The Court can look at the Zoning Board of Appeals' decision as a definitive ruling on how Bikur Cholim can use its property."). Plaintiffs have, therefore, submitted "at least one meaningful application to the relevant municipal entity," *Sayville*, 43 F.4th at 296, and their FHA claims are ripe.

Moreover, Plaintiffs cannot be required to seek a variance in this case, as that would have been futile. Under the "futility exception," a property owner is not required to pursue a variance "when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." *Murphy*, 402 F.3d at 349 (citing *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 98-99 (2d Cir. 1992)). Under Forestburgh's town code and New York Law, only the ZBA is authorized to grant a variance. *See* Forestburgh Code, Chapter 180 § 85-23(B); N.Y. Town L. § 267–b. But in its denial, the ZBA took the position that "because the terms, restrictions and conditions incorporated into the PDD have the force and effect of law, no one other than the *municipal corporation* . . . may modify or amend the terms, restrictions, and conditions in the PDD." *See* ZBA Denial at 30, ECF 46-2 (emphasis added). As the ZBA itself believes that it lacks jurisdiction to grant a variance, any such application would be futile. *See Murphy*, 402 F.3d at 349.

Contrary to Defendants' claim, finality does not require Plaintiffs to stay on the administrative treadmill and head back to the Town Board to seek "review or further consideration" (Mem. at 4) or "permission to deviate from the original approvals." (Mem. at 8.) Forcing Plaintiffs to return to the Town Board is tantamount to making them start from scratch, which will add years and enormous costs to the project, and is not required for their claim to be ripe. *Sunrise Dev., Inc. v. Town of Huntington, New York*, 62 F. Supp. 2d 762, 771 (E.D.N.Y. 1999) (rejecting argument that plaintiff, who had already submitted a zoning application which town denied, had to "begin the application process anew to seek a zoning change" because that would add "significant additional delay and expense.") The thrust of Plaintiffs' complaint is that their building applications *did not* deviate from the approved PDD, but that the ZBA "manufactured" this justification in order to thwart their project and that the real reason for the

denial was anti-Hasidic bias. (*See id*. ¶¶ 379, 390-91, 402-03, 423.) This disagreement is concrete, not abstract. Defendants' administrative treadmill argument would provide an easy way for municipal governments to avoid liability under the FHA. Thus, Defendants' arguments to dismiss Plaintiffs' FHA claims on ripeness grounds must fail.

Finally, "[i]t is well-established that plaintiffs are entitled to bring an FHA . . . claim based on a discriminatory land use decision, even if a state-court Article 78 proceeding is available." *Joseph's House & Shelter, Inc. v. City of Troy Planning Bd*., No. 05-CV-513, 2009 WL 2413936, at *1 (N.D.N.Y. Mar. 31, 2009) (citing *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 45 (2d Cir. 2002)); *see Sinisgallo v. Town of Islip Hous. Auth*., 865 F. Supp. 2d 307, 320-21 (E.D.N.Y. 2012) ("[I]t is well-settled that a plaintiff is not required to exhaust administrative remedies before commencing an FHA . . . claim in federal court.") (citing *Huntington Branch, N.A.A.C.P. v. Town of Huntington*, 689 F.2d 391, 394 n.3 (2d Cir. 1982)); *see also Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 104 (1979) (noting that among the remedies Congress intended to provide FHA plaintiffs was "immediate suit in federal district court"). This is so because "the purpose of allowing 'immediate judicial review,' as an alternative to local remedies would be seriously undercut if [FHA] actions were conditioned upon prior exhaustion of state administrative remedies." *Huntington,* 689 F.2d at 394 n.3. Defendants' exhaustion argument, therefore, manufactures an imaginary barrier to FHA claims.[1]

### III. Plaintiffs Have Standing to Bring Their FHA Claim

The allegations of the Complaint, taken as true, demonstrate that Plaintiffs have standing to bring their FHA claim. Plaintiffs allege that, due to anti-Hasidic bias, they have been unable to sell homes and earn income from the property and have instead incurred unnecessary costs and expenses. (Comp. ¶¶ 6, 138, 273, 428, 465-468.) For example, the Complaint alleges that: "Plaintiffs have also suffered significant financial damages, loss of all economically productive use of the Project Site, lost profits and asset value, all as a result of the Defendants' actions and their application to the Plaintiffs, including Defendants' discriminatory conduct." (Comp. ¶ 465.) Plaintiffs' allegations confer standing under the FHA.

"Standing under the Fair Housing Act is as broad as Article III permits." *MHANY Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 600 (2d Cir. 2016). "The FHA confers standing to challenge such discriminatory practices on any 'aggrieved person.'" *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 424 (2d Cir. 1995) (citing 42 U.S.C. § 3613(a)(1)(A)). An "aggrieved

---

[1] Defendants' ripeness argument also contradicts the *Rooker-Feldman* doctrine, which provides that federal courts lack subject matter jurisdiction where: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state-court judgment; (3) the plaintiff seeks district court review and rejection of that judgment; and (4) the state-court judgment was rendered before the district court proceedings commenced." *Inn World Rep., Inc. v. MB Fin. Bank NA*, No. 21-2911-CV, 2022 WL 17841529, at *3 (2d Cir. Dec. 20, 2022) (citation omitted). Defendants' argument sets a trap for plaintiffs challenging land use decisions: on the one hand, Defendants assert, plaintiffs' claims cannot be heard without an Article 78 appeal because they are not ripe; on the other, plaintiffs who follow Defendants' advice to first pursue an Article 78 appeal in state court could then find the doors of the federal courthouse closed to them by the *Rooker-Feldman* doctrine.

person" includes "any person who — (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." *Id.* Housing developers such as Plaintiffs may readily qualify as "aggrieved persons" under the FHA. *See, e.g., Anderson Group LLC v. City of Saratoga Springs*, 805 F.3d 34, 46 (2d Cir. 2015) (holding that developer's "lost up-front economic expenditures on a detailed development proposal for a specific piece of property, coupled with the denial of a necessary special use permit, constitute injuries-in-fact that are fairly traceable to the City's actions, thus affording [them] standing"); *Bloomingburg Jewish Educ. Ctr. v. Village of Bloomingburg*, 111 F. Supp. 3d 459, 490 (S.D.N.Y. 2015) ("courts have granted standing to, among others, developers asserting challenges under the FHA against municipal decisions that present a barrier to developments") (citation and quotation marks omitted); *Lynn v. Village of Pomona*, 373 F. Supp. 2d 418, 426-28 (S.D.N.Y. 2005) (finding that real estate developer has standing where it "suffered economic losses and other hardships as a result of defendant [village's] allegedly discriminatory application of [a local zoning ordinance]"). And the reason is obvious: if a local government discriminatorily prevents the development of property to sell to potential residents, that "injures" both the seller as well as the prospective buyers.

Defendants neglect to address the harms that Plaintiffs have articulated, and instead assert that Plaintiffs' discrimination claims "are all based upon the violations of the rights of potential buyers, i.e. unnamed third parties who are not named in this action." (Mem. at 10.) In doing so, Defendants simply ignore injuries that Plaintiffs allege, in a dedicated section of the Complaint entitled "Overview of Plaintiff's Injuries." (Comp. ¶¶ 461-470.)

Finally, Defendants' reliance upon *Highview Properties D.H.F. Inc. v. Town of Monroe, et al.*, 606 F. Supp. 3d 5 (S.D.N.Y. 2022) (Mem. at 10), is misplaced. *Highview* suggests that a plaintiff's FHA claim may fail if that claim is premised only upon harm to third parties. But that is not what Plaintiffs allege here. *Compare Highview*, 606 F. Supp. 3d at 19, *with* Comp. ¶¶ 461-470. And to the extent that Defendants maintain that *Highview* stands for the proposition that a developer cannot bring a claim under the FHA when its project is thwarted on account of anti-Hasidic bias, that argument would be inconsistent with well-established Second Circuit precedent recognizing the right of a developer to bring FHA claims as an "aggrieved person" under the statute, *see, e.g., MHANY*, 819 F.3d at 600; *Anderson Group*, 805 F.3d at 46; *LeBlanc-Sternberg*, 67 F.3d at 424, particularly where, as here, the principals of both plaintiff corporations are themselves Hasidic (*id.* ¶ 2).

Thank you for your consideration of this matter.

                                                    Respectfully,

                                                  DAMIAN WILLIAMS
                                                  United States Attorney

                        By:    /s/ *David J. Kennedy*
                              DAVID J. KENNEDY
                              Assistant United States Attorney
                              Telephone: (212) 637-2733
                              Email: david.kennedy2@usdoj.gov