# Exhibit F

# SIVE | PAGET | RIESEL

**STEVEN BARSHOV**
DIRECT DIAL: 646.378.7229
SBARSHOV@SPRLAW.COM

October 28, 2021

BY EMAIL

Mr. Glenn A. Gabbard
Code Enforcement Officer/Building Inspector
Town of Forestburgh
332 King Road
Forestburgh, N.Y. 12777

Javid Afzali, Esq.
Harris Beach PLLC
677 Broadway
Albany, NY 12207

Re:     Lost Lake Building Permit Application; October 7, 2021 Letter

Dear Mr. Gabbard and Mr. Afzali,

I am writing to you both in response to Mr. Gabbard's letter of October 7, 2021 (the "Gabbard Letter") because it is obvious that Mr. Gabbard is not acting alone and that the protracted delays associated with the processing and review of my client's single building permit application are being orchestrated with the intent to obstruct the issuance of a building permit to my client.

Prior to discussing the details of the Gabbard Letter and the accompanying letter from Bergmann Associates (the "Bergmann Letter"), certain global observations are necessary. First, there is no role for the Town Planning Board or its Chair to play vis-à-vis an application for a building permit in Lost Lake. The Project has been approved by the Town Board and neither the Planning Board nor its Chair have any role in administering the approvals issued by the Town Board, especially as to whether a building permit application is complete or whether a building permit application is to be issued. Should it become evident that either the Planning Board or its Chair have been injecting themselves into the review of the pending building permit application or otherwise attempting to assume a role, whether informal or formal, to affect the Town's administration of the Lost Lake project approvals, such activity is outside the lawful scope of duties of the Planning Board and the Planning Board Chair. Such conduct would give rise to personal liability and my client will not hesitate to file suit to redress such a grievance if it becomes evident that the Planning Board, the Planning Board Chair, or both have or are acting outside the scope of their lawful duties.

Next, be advised that my client will be offering reasonably priced and affordable units to Hasidic Jewish families who have a very significant unmet demand for such units. The Town's obstruction and delay in issuing building permits, if it continues, will frustrate my client's ability to offer such

Case 7:22-cv-10656-VB   Document 84-6   Filed 06/01/23   Page 3 of 10

Glenn Gabbard
October 28, 2021
Page 2 of 9

units to the Jewish community and will give rise to civil rights and fair housing claims, with associated liability.

With respect to a potential civil rights claim, potential claims that the Planning Board and/or its Chair have been acting outside the scope of their duties, and other potential litigation against the Town, you are hereby notified that all written documents and communications relating to the Lost Lake project and/or my client's building permit applications must be preserved in anticipation of document demands and discovery associated with such litigation. All Town boards, officials, employees, and consultants must suspend any existing procedures or protocols for destroying, deleting or discarding any information that may be related to the Lost Lake project in any way. Do not, for example, automatically delete e-mail or recycle documents relating to the Lost Lake project as might otherwise be done in the ordinary course of business.

When in doubt, no Town board, official, employee or consultant should assume that documents, e-mails or other tangible materials are not related to potential litigation against the Town in connection with the Lost Lake project.  Instead, all Town Board, officials, employees and consultants must be inclusive and preserve any relevant documents or files that may be stored outside the office, such as at home or on a home personal computer.  Such document preservation includes not only documents in the possession of any Town Board, official, employee, or consultant, but also those under custody or control.  For example, if an administrative assistant maintains files for a Town board, official, employee, consultant, that person shall preserve documents as well.

Turning generally to the Gabbard and Bergmann Letters, there are two overarching matters which are most disturbing. First, is that Mr. Gabbard is requesting documents be completed and submitted that he stated previously to my client's contractor were not needed and which were not required when he issued a building permit previously.  These documents are being submitted in the interest of cooperation because my client has nothing to hide.  The specifics are discussed below. However, on a more general level, it is unacceptable for Mr. Gabbard to change positions and arbitrarily demand information that was previously not needed to issue a building permit and which he stated was not needed for the pending application. It is clear that someone else is directing Mr. Gabbard and forcing him to change his positions.  He is the one responsible for determining whether a building permit is to be issued – no one else:  not the Planning Board, not the Planning Board Chair, and not the Town's counsel.  It is expected that Mr. Gabbard will perform his duties without outside interference.

Second, there is absolutely no reason for retention of Bergmann Associates. My client was not informed of the proposed retention of Bergmann Associates. Note that a FOIL Request has been submitted to the Town requesting all information pertaining to communications with and retention of Bergmann Associates. My client objects to the retention of an outside consulting firm to perform or attempt to perform Mr. Gabbard's duties. Mr. Gabbard is the one who issues building permits and it is his job to review the building permit application, apply the appropriate and relevant criteria, and issue or deny the permit application. There is nothing unusual or complicated about this building permit application that requires retention of an outside consultant.

Glenn Gabbard
October 28, 2021
Page 3 of 9

Indeed Mr. Gabbard, you have already issued one building permit to my client and construction on that site has begun. You did not need an outside consultant then and you do not need one now for nothing has changed in the interim about the Lost Lake project. My client will not reimburse the Town for one penny for consultant costs which are unnecessary, incurred for the purpose of obstruction, and/or are otherwise not legitimate.

Even worse, the Bergmann Letter makes repeated reference to the Lost Lake Declaration of Covenants and Restrictions (the "Restrictive Declaration") as if the Town, generally, and Mr. Gabbard, specifically, have the power to enforce its provisions. Neither does and I am certain, Mr. Afzali, that you are well aware of this very basic hornbook principle of land use law. Multiple citations confirming that building permits cannot be denied over alleged noncompliance with a Restrictive Declaration are set forth below in the body of this letter. Mr. Afzali, I expect you to confirm this in writing to Mr. Gabbard. If Mr. Gabbard persists and continues to attempt to enforce the Restrictive Declaration or attempt to inject it into the review of the building permit application, my client will sue and demand a writ of prohibition to prevent Mr. Gabbard from acting outside the scope of his jurisdiction.

With the foregoing in mind, the following are specific responses to the Gabbard Letter.

 I.  Gabbard Letter – Opening Paragraph and Items Numbered 1 - 4

I am not going to comment on or address the quotes from my prior correspondence. My prior statements are plain, obvious, and speak for themselves. Nothing further need or will be said.

 II.  Gabbard Letter – Second Paragraph and Items Numbered 1 – 4.

Regarding item number one, Mr. Gabbard acknowledges receipt of a letter which is characterized as "purported to be from Orange & Rockland Utilities" (emphasis added). I highly doubt Mr. Gabbard wrote this sentence or used the word "purported." This use of the word "purported" is both ridiculous and offensive. You have had the letter for one year. It is genuine and you both know it. Had there been any legitimate question as to its authenticity, that should have been raised long ago and to verify it, a simple phone call to O & R is all that would be needed.

 III.  Gabbard Letter – Third Paragraph and Items numbered 1- 17.

The paragraph begins by stating that the Building Department requested that its consultant Bergmann Associates perform a review of the building application and all subsequent submissions. There is no reason stated why such a review was purportedly needed. Nor is any document attached confirming when such a review was sought, with what parameters, and from whom the request was made. A FOIL demand has been submitted requiring this and related communications to be disclosed, as well as the contract retaining Bergmann, all invoices from Bergmann, etc. It is absurd to think that a simple one lot building permit application requires review by an outside planning consulting firm.

Case 7:22-cv-10656-VB   Document 84-6   Filed 06/01/23   Page 5 of 10

Glenn Gabbard
October 28, 2021
Page 4 of 9

Turning now to the specifics:

A.  Item 1 and References to the Restrictive Declaration

You demand support/authority as to how the Lost Lake Project site plan and subdivision approval authorizes construction of a residential dwelling without the project infrastructure having been installed first.  You both have it backwards.  A building permit has already been issued for this project and this infrastructure matter was not an obstacle to the issuance of that building permit. A copy of the previously issued building permit is attached.

The law is crystal clear that the requested building permit must be issued, or YOU must demonstrate why the building permit application is being deemed incomplete and/or denied when under the same facts and circumstances, you issued a building permit previously.  *See Knight v. Amelkin*, 68 N.Y.2d 975 (1986).  There, the Court of Appeals made crystal clear that an administrative official or board must either make the same decision when presented with the same or similar facts or explain why the prior decision is not being followed. *See also Matter of Field Delivery Serv. [Roberts]*, 66 N.Y.2d 516 (1985) (holding that an administrative decision which neither adheres to prior precedent nor indicates reasons for reaching a different result on essentially the same facts is arbitrary and capricious); *Lucas v. Board of Appeals of Village of Mamaroneck*, 57 A.D.3d 784 (2d Dept. 2008); *Tall Trees Const. Corp. v. Zoning Board of Appeals of the Town of Huntington*, 97 N.Y.2d 86 (2001) (quoting from and relying on *Knight*, *supra*).

Thus, because building permit number BP2020-0582 was issued by Mr. Gabbard on November 17, 2020 for Tax Lot 3.6-C-5, the current application for a building permit must be deemed complete or you must explain why you are determining this building permit application is not complete, when there had been no determination of incompleteness in connection with the prior building permit arising from construction of the project's infrastructure.  That is the rule of law established by the Court of Appeals and the Second Department in the cases cited above. Many more could be cited as well.

The Bergmann Associates letter states that a "primary condition" in the Findings Statement and in the Declaration is that "all site infrastructure improvements for Phase I (and all subsequent phases) are to be completed, inspected approved, and deemed operational by the Town prior to issuance of any building permits."  I re-read the Findings Statement and it contains no such statement.  This quoted statement from the Bergman Associates letter is not merely inaccurate, it is entirely false and a sheer fabrication.

Even worse, if that is possible, the Bergmann Associates letter repeatedly references the Restrictive Declaration, which you have no legal basis to consider when determining whether a building permit application is complete or whether to issue or deny a building permit.  The Restrictive Declaration does not vest the Town or any of its boards, departments, or officials with authority to apply or enforce its provisions. You have no legal authority to review a building permit application for purported compliance with the Restrictive Declaration.

Glenn Gabbard
October 28, 2021
Page 5 of 9

This is not exactly a novel or new concept in land use law. As long as there has been zoning and building permits, the courts have ruled that building permits cannot be denied because of alleged noncompliance with a restrictive covenant. *See Forte v. Wolfe*, 225 N.Y.S.2d 858 (Sup. Ct. Nassau Cty. 1961) (holding that a building department has no power or discretion to refuse a building permit on the ground that the proposed building violates a restrictive covenant); *see also People ex rel. Rosevale Realty Co., Inc. v. Kleinert*, 204 App.Div. 883 (2d Dept. 1922) (holding that the superintendent of a buildings department lacks power to deny a building permit due to alleged violation of a restrictive covenant); *Matter of Friends of Shawangunks v. Knowlton*, 64 N.Y.2d 387, 392 (1985) (holding that "[t]he use that may be made of land under a zoning ordinance and the use of the same land under an easement or restrictive covenant are, as a general rule, separate and distinct matters, the ordinance being a legislative enactment and the easement or covenant a matter of private agreement.").

So, the repeated references in the Bergmann Letter to what the Restrictive Declaration provides or does not provide are entirely irrelevant to whether the building permit application is complete or is to be approved. The foregoing applies to every instance in which you request additional information, support, or authority based upon the contents of the Restrictive Declaration. You have neither the power to enforce the restrictive declaration, nor to import its contents into the review of the building permit application.

In addition, there is no requirement in any Lost Lake approval, including the phase 1 subdivision approval, which requires installation of sewers, roads, water, or electric service prior to issuance of a building permit. Nor is there any requirement for fire hydrants to be installed prior to issuance of a building permit, or for an overall Phase I site plan to be prepared. Phase 1 has been approved, as you both know, and homes can be constructed in any sequence that the owner or owners of the lots choose, and no prior installation of infrastructure is required for a building permit to be issued.

Demanding that all of this work be <u>completed</u> before a building permit is issued is absurd. Roads are never completed before a building permit is issued because construction vehicles would wreck the completed roads. Certainly, <u>necessary</u> infrastructure must be installed and operational before a certificate of occupancy is issued, but even then, the entire first phase infrastructure need not be completed. All that is needed for a certificate of occupancy are the water, sewer, electric and related infrastructure needed to serve the lots upon which homes have been built.

The notion that all phase 1 infrastructure must be installed before even the first home is built is an obvious pretext to prevent my client from constructing homes. Since it is well known that the homes will be made available to the Jewish community, the sad truth is that it appears that these ridiculous obstacles are being placed to prevent the Jewish community from settling in Lost Lake. That will not be tolerated.

B. <u>Item 2</u>

The only erosion and sediment control plan that is required is the one which has been issued by the New York State Department of Environmental Conservation governing construction activities. That is in place and has been provided to the Town. Any other provisions contained in the

Case 7:22-cv-10656-VB    Document 84-6    Filed 06/01/23    Page 7 of 10

Glenn Gabbard
October 28, 2021
Page 6 of 9

Restrictive Declaration concerning erosion and sediment control are not under either your control or jurisdiction and have nothing to do with issuance of a building permit.

    C. Items 3 – 9

The items enumerated in items 3 through 9 are being submitted by my client directly to the Building Department under a separate cover letter. The reason they were not provided earlier is because you, Mr. Gabbard, informed my client's contractor that they were not necessary. All of these items are easily identified. It is absurd that you have had the building applications for months, issued multiple letters regarding the applications, and only now request what you previously indicated was not necessary. However, to attempt (yet again) to be cooperative, my client is resubmitting the affidavits and plans and providing the information you previously stated was not needed.

    D. Items 10 and 11

Regarding item 10, the only change to the plot plan is to add the locations of utility easements within the lot. This item in your letter references 17 items in the Bergmann Associates memo. The following are the responses to each Bergmann Associates memo item:

    1. Bergmann Item 1: The plot plan was previously submitted after dialogue and communication with Mr. Gabbard as to what should be shown thereon. The plot plan for the lot on which the building permit is sought meets the requirements of Forestburgh Code § 68-4. The statement by Bergmann Associates to the contrary contains nothing specific and fails to state how or why there is a nonconformity. Moreover, to the extent that the Bergman Associates letter claims that the plot plan is inconsistent with the Design Guidelines, that is not a matter within your jurisdiction. The Design Guidelines are provided for in the Restrictive Declaration and their interpretation and enforcement is not within your jurisdiction. You have no power to consider whether the plot plan is or is not in conformity with the Design Guidelines for Lost Lake.

    2. Bergmann Item 2: There is no requirement that an overall plan for the entire Phase I development area be submitted. That is not a requirement of the Forestburgh Code or the project approvals, and you have no right to demand it. Regardless, the materials submitted show the location of the lot in relation to the remainder of the site.

    3. Bergmann Items 3 through 7: All required information regarding items on or in lot 303 have been provided in the submitted construction drawings and plot plan. There is no requirement for the plot plan to show additional stormwater management facilities outside the lot. None were required as a precondition to issuing the prior building permit and, as stated previously, you are required to adhere to your prior decisions.

    4. Bergmann Items 8 through 12, 14 through 16: There is no requirement for submission of a Phase 1 plot plan as referenced in Bergmann Item 9. This is a fabrication of something entirely new by Bergmann Associates and has no basis in either the Project approvals or the Town Code. Moreover, all of the references to items in the Restrictive Declaration and

Case 7:22-cv-10656-VB   Document 84-6   Filed 06/01/23   Page 8 of 10

Glenn Gabbard
October 28, 2021
Page 7 of 9

Design/Site Guidelines are outside your jurisdiction and, therefore, irrelevant to finding the building permit application complete or issuance of the building permit. For the building permit application, you have no authority to require submission of a plan showing the location of common areas in Phase 1 and all subsequent phases. This is a matter which was addressed in the extant approvals issued for Lost Lake, including the Phase 1 subdivision approval and nothing more is required. In addition, this was not a matter you required in connection with issuance of the prior building permit, and you have no authority to interject such a requirement now.

In addition, you have no authority to demand items that arise from the Design/Site Guidelines that were created pursuant to the Restrictive Declaration, such as the identification of lots as "special lots, whether lot 303 is subject to special setback considerations under the Design Guidelines, maximum site density coverage, and areas of disturbance. As stated previously, you have no authority to import into the review of the building permit application matters that are addressed in the Restrictive Declaration and/or its Design, Site and/or Landscape Guidelines. You also did not require any of these items when you issued the prior building permit, and you are required to adhere to your prior decisions when reviewing this building permit application.

   5.  Bergmann Items 13 and 17. There are no fences or walls on the lot, therefore there is nothing to show. You have no basis to require the location of a central mail facility/kiosk as precondition of issuing a building permit for lot 303. You also did not require this when you issued the prior building permit, and you are required to adhere to your prior decisions when reviewing this building permit application.

Regarding your Item 11, you have no authority to review the architectural style of the home or its conformity with the Design Guidelines. This is outside the scope of your authority for the reasons stated above.

   E.  Items 12 and 13

Submitted under cover of a separate letter from my client, that is being hand delivered to the Town today, is documentation from a qualified professional confirming that the home has been designed to meet the criteria for LEED certification. Note that this review authority does not arise from the Restrictive Declaration, but from the Project approvals issued by the Town Board.

   F.  Items 14 -16

As stated previously, you have no authority to import into the review of the building permit application matters that are addressed in the Restrictive Declaration and/or its Design, Site and/or Landscape Guidelines. You also did not require any of these items when you issued the prior building permit, and you are required to adhere to your prior decisions when reviewing this building permit application.

Case 7:22-cv-10656-VB    Document 84-6    Filed 06/01/23    Page 9 of 10

Glenn Gabbard
October 28, 2021
Page 8 of 9

      G. <u>Item 17</u>

Stormwater plans have already been submitted and approved as part of the approvals issued by the Town Board for the Project, including Phase 1 subdivision approval. You have no authority to require additional stormwater plans as a precondition of determining the building permit application is complete. You also did not require this when you issued the prior building permit, and you are required to adhere to your prior decisions when reviewing this building permit application.

  IV. <u>Conclusion</u>

It is patently obvious, given the foregoing, that the vast majority of items you deem to be required for the building permit application to be complete you are not authorized to require. You are acting outside the scope of your duties by attempting to enforce the Restrictive Declaration and its associated Design, Site, Landscape, and other Guidelines.

You have ignored your prior decisions and have acted arbitrarily and capriciously in attempting to impose new building permit criteria you did not require previously. You are attempting to obstruct my client from undertaking this previously approved project. Such obstruction is costing my client very substantial monetary damages, to understate the obvious.

As stated in the beginning of this letter, my client is very concerned that you are abdicating your responsibilities under the Town Code and that others in the Town government have interjected themselves into the process of reviewing the building application, determining whether the building application is complete, and determining whether a building permit is to be issued. Accordingly, we have submitted a FOIL request to identify who in the Town government has been so acting and obstructing the building permit review process.

Any person, including members of any Town board, who unlawfully injecting themselves into the building permit review process will be sued personally and held accountable for acting outside the scope of their duties. The only person authorized to review and approve a building permit application is YOU, Mr. Gabbard. It is time that others stop meddling and obstructing and that you do your job.

If the building permit application is not deemed complete at once and if a building permit is not issued by November 5, 2021, my client will have no choice but to file suit and assert all cognizable legal claims, including claims for damages. If litigation becomes necessary, my client reserves the right to bring such additional claims against the Town as are warranted in order to protect its rights to undertake construction of this shovel-ready development, as well as to demand production of all related documents to identify who has been causing the obstruction of the approval of my client's building permit application.

There will be no more letter writing. Either the building permit application is determined to be complete, and a building permit issued, or my client will sue to hold accountable all those who are unlawfully obstructing issuance of the building permit. I sincerely hope that common sense and

Glenn Gabbard
October 28, 2021
Page 9 of 9

reason will prevail so that litigation is not triggered. However, based on what I have read and observed to date, I do not hold out much hope that my client's rights will be honored and the law will be followed by the Town, its boards, officials, employees, and consultants. Unfortunately, it would appear that litigation is far more likely than not.  It would be a pleasant and unexpected surprise to be proven wrong.

Yours truly,

Steven Barshov

cc:     Supervisor Hogue
        Mordechai Halberstam
        Yehuda Miller
        Jack Gold