IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOST LAKE HOLDINGS LLC et al. <br><br> Plaintiffs, <br><br> vs <br><br> TOWN OF FORESTBURGH, et al. <br><br> Defendants. | Civ. Action No. 7:22-cv-10656 |

**DECLARATION OF YEHUDA MILLER**

Yehuda Miller declares as follows, pursuant to 28 U.S.C. § 1746:

1. I am an officer of Lost Lake Holdings LLC and Mishconos Mazah LLC, Plaintiffs in this action, and make this declaration in those capacities.

2. I have personal knowledge of the facts set forth herein.

3. I am over the age of eighteen (18) and competent to testify in a court of law.

4. I respectfully submit this Declaration in support of the Plaintiffs' Motion for Preliminary Injunction being filed contemporaneously with the same.

5. I am a Hasidic Orthodox Jew.

6. I am the Vice President of the Plaintiff Lost Lake Holdings LLC, a single-purpose real estate development company.

7. I am the Vice President of the Plaintiff Mishconos Mazah LLC, a single-purpose real estate development company.

8. On June 30, 2020, Plaintiffs Lost Lake Holdings LLC and Mishconos Mazah LLC purchased what was formerly known as the Lost Lake Resort property in the Town of Forestburgh, New York ("Property").

9. The Property is approximately 3.3 square miles in size.

10. At the time of this purchase, the Property had been approved and shovel-ready, for a master-planned, large-scale mixed-use primarily residential subdivision located in the Town of Forestburgh (the "Town"), Sullivan County, New York (the "Project").

11. The approved development involved the rezoning of 2079.51 acres, or approximately 3.3 square miles, of land owned by Double Diamond and approved a seven-phase project of 2,557 single family residential lots, thirty single-family cottages, and forty multi-family townhouse-style condominium units for a total of 2,627 residential units, along with multiple recreational amenities, including a golf course.

12. Double Diamond Resorts, Inc., the former owner of the Property and Project, is a real estate developer from Texas whose principals and officers are not Orthodox Jews.

13. In my capacity as Vice President of the LLC Plaintiffs, I have been working to develop the Property in accordance with the Project approvals and any other regulations affecting the Project, and therefore I have personal knowledge of planning, approval, regulatory and other documents that relate to the Project.

14. I have communicated with various professionals and Town officials about the Project.

15. During my involvement with the Project, I have also become personally familiar with Town Board proceedings and recent applications before the Board.

16. Attached hereto as **Exhibit A** is a true and correct copy of draft minutes of the September 1, 2016 meeting of the Town of Forestburgh, which are available on the

Town of Forestburgh's website. http://forestburgh.net/wp-content/uploads/2016/06/TB-9-1-16.doc

17. Attached hereto as **Exhibit B** is a true and correct copy of draft minutes of the May 18, 2011 meeting of the Town of Forestburgh, which are available on the Town of Forestburgh's website (http://forestburgh.net/wp-content/uploads/2016/06/tb5-18-11specialmeeting.pdf).

18. Attached hereto as **Exhibit C** is a true and correct copy of the Resolution of the Town of Forestburgh Board Granting Conditional Final Subdivision Plat Approval for Phase I of the Lost Lake Resort dated December 17, 2012.

19. On December 17, 2012, the Town Board had granted conditional final site plan and subdivision plat approval for Phase 1 of the Project. Exhibit C at 1-5. In 2013, Double Diamond obtained final subdivision and site plan approval for the first phase of the Project consisting of 400 single-family home lots and the first nine holes of the golf course. Exhibit C at 6.

20. Attached hereto as **Exhibit D** is a true and correct copy of minutes of the June 25, 2013 meeting of the Forestburgh Town Board, which are available on the Town of Forestburgh's website as part of the record of the Zoning Board of Appeals *In The Matter Of The Application Of: Rose Improvement And Lost Lake Holdings LLC* (http://forestburgh.net/wp-content/uploads/1646/71/9.-2013.06.25-TB-Resolution.pdf).

21. By the time the Project was purchased by LLH, the Phase 1 final subdivision plat had been signed and filed with the Sullivan County Clerk, and Double Diamond had obtained all necessary approvals from all other governmental agencies for Phase 1 of

the Project. Exhibit D at 2-3.

22. At the time of our purchase, Phase 1 of the Project was "shovel-ready," and all that was needed for construction of homes in Phase 1 to begin would be issuance of building permits by the Town of Forestburgh Building Inspector (the "Building Inspector").

23. Attached hereto as **Exhibit E** is a true and correct copy of draft minutes of the May 5, 2011 meeting of the Town of Forestburgh, which are available on the Town of Forestburgh's website (http://forestburgh.net/wp-content/uploads/2016/06/tb5-5-11_0.pdf).

24. Attached hereto as **Exhibit F** is a true and correct copy of the Town of Forestburgh, Sullivan County, New York 2017 Comprehensive Plan.

25. The Town of Forestburgh has never publicly posted the Minutes of its November 5, 2020 Town Board meeting, where the Town Board voted to hire Chuck Voss of Bergman Associates as the Town's planning consultant, as well as a "litigation" firm.

26. In or about August 2021, I was told by Chuck Voss, who I understood was a consultant hired by the Town to review applications for building permits related to the Project, that he spoke mostly to Richard Robbins (the Chairman of the Town's Planning Board) about the Project, and that LLH should also speak with Mr. Robbins directly about the Project. I understood Mr. Robbins to have been acting as the Town's "point person" for the Project.

27. Attached hereto as **Exhibit G** is a true and correct copy of draft minutes of the February 4, 2016 meeting of the Town of Forestburgh, which are available on the Town of Forestburgh's website (http://forestburgh.net/wp-content/uploads/2016/06/TB-2-4-16.doc).

28. Attached hereto as **Exhibit H** is a true and correct copy of draft minutes of the March 2, 2017 meeting of the Town of Forestburgh, which contain Resolution 11 of Town Board for Forestburgh appointing a Special Committee to Prepare an Amendment to Town's Comprehensive Plan, which are available on the Town of Forestburgh's website (http://forestburgh.net/wp-content/uploads/2016/06/TB-3-2-17-and-PH-kennels-PDD.doc).

29. Attached hereto as **Exhibit I** is a true and correct copy of page 21 of the Sullivan County Chamber of Commerce Pride Awards 2015, Sullivan County Democrat, which is available online at https://issuu.com/scdemocrat/docs/prideawards15/21. [1200]

30. Attached hereto as **Exhibit J** is a true and correct copy of minutes of the March 28, 2017 meeting of the Town of Forestburgh Joint Meeting Planning Board and Comprehensive Plan Special Board, which are available on the Town of Forestburgh's website (http://forestburgh.net/wp-content/uploads/2016/06/PB-minutes_Mar-28_2017_final.pdf).

31. Attached hereto as **Exhibit K** is a true and correct copy of minutes of the June 27, 2019 meeting of the Town of Forestburgh Planning Board, which are available on the Town of Forestburgh's website (http://forestburgh.net/wp-content/uploads/2019/08/2019-06-27-Minutes-Final-FINAL.pdf).

32. Attached hereto as **Exhibit L** is a true and correct copy of Local Law No. 4 of 2018 enacted by the Town of Forestburgh, New York on October 4, 2018, which imposed a six-month moratorium on the approval of, or issuance of, any permits, including building permits, related to major subdivisions in the Town.

33. Attached hereto as **Exhibit M** is a true and correct copy of Local Law No. 4 of 2019

enacted by the Town of Forestburgh, New York on August 1, 2019, which imposed a moratorium on the processing of applications for and the issuance of any approvals or permits for planned development districts in the Town.

34. To my knowledge, our Project was the only development project that had received PDD approval and was also a major subdivision in the Town, and therefore the only project to which the moratoria imposed by Local Law No. 4 of 2018 and Local Law No. 4 of 2019 applied.

35. At the time of purchase of the Project by Plaintiffs, Lost Lake Holdings LLC and Mishconos Mazah LLC, Double Diamond had installed millions of dollars of infrastructure improvements on the Property.

36. The purchase of the Project and the Project Site included (a) conveyance of the entire Project Site with the exception of those lots in Phase 1 that had already been sold to third parties; (b) transfer of all Project development rights, including all rights in and to the Town Board's approvals of the PDD rezoning, Lost Lake Master Plan Approval, Open Space Plan, and Phasing Plan; (c) transfer of all rights in and to the final Phase 1 subdivision and site plan approvals issued by the Town Board; (d) transfer of all rights in and to all federal, state, county, and other permits, approvals and authorizations for the Project; and (e) transfer of ownership of all infrastructure installed in and on the Project Site by the Original Developer.

37. Attached hereto as **Exhibit N** is a true and correct copy of minutes of the May 2, 2019 meeting of the Town of Forestburgh Board, which are available on the Town of Forestburgh's website (http://forestburgh.net/wp-content/uploads/2019/08/TB-5-2-19.doc).

38. Attached hereto as **Exhibit O** is a true and correct copy of Local Law No. 1 of 2020 of the Town of Forestburgh Board dated January 9, 2020, which repealed and abolished the Planned Development District Laws of 2008, 2011 and 2017.

39. As a result of Local Law No. 1 of 2020, no future owner of the Project would be able to add parcels to the Project or expand it beyond its current borders, nor have any ability to modify the terms of the PDD, which the repealed PDD law would have permitted (with Town approval).

40. In July of 2020, the Plaintiffs closed on their purchase of the Project and the Property from Double Diamond.

41. Attached hereto as **Exhibit P** is a true and correct copy of the June 6, 2019 minutes of the public hearing on Proposed Local Law #2 of the Town of Forestburgh Board, which are available on the Town of Forestburgh's website (http://forestburgh.net/wp-content/uploads/2019/08/TB-6-6-19-w-PH.doc).

42. Attached hereto as **Exhibit Q** is a true and correct copy of the minutes of the October 1, 2020 monthly meeting of the Town of Forestburgh Board, which are available on the Town of Forestburgh's website (http://forestburgh.net/wp-content/uploads/2020/11/TB-10-1-2020.docx).

43. Currently, the Project has only 400 subdivided lots in Phase 1, to which the former $200.00 Parks & Playground fee imposed by the Town applied.

44. There are still approximately 2,157 lots to be subdivided in the Project for later Phases. The total increase in the Parks & Playground fee for the Project based on the increased fees will be approximately $1,800.00 x 2,157 lots, or $3,882,000.00.

45. Attached hereto as **Exhibit R** is a true and correct copy of the Building Permit

Application for the lot identified as Tax Map ID No. 3.C-6-5 (incorrectly denoted on the application as Tax Map ID No. 3.C-6-4) (Lot 301) in the Project dated November 17, 2020, which Plaintiffs submitted to the Town of Forestburgh.

46. Attached hereto as **Exhibit S** is a true and correct copy of the Building Permit dated November 17, 2020 issued by the Town of Forestburgh for the lot identified as Tax Map ID No. 3.C-6-5 (Lot 301) in the Project.

47. As part of the Project and pursuant to the building permit issued on November 17, 2020 by the Town of Forestburgh, LLH constructed a single-family home on Tax Map ID No. 3.C-6-5 (Lot 301) after receiving a building permit.

48. The Town never revoked the building permit for Lot 301 even though the plans for the home being built on that Lot pursuant to the first building permit were materially the same as those for the homes that were proposed in the subsequent building permit applications that were denied by the Town, and which were the subject of the subsequent ZBA Appeal.

49. Prior to the filing of this action, neither the Town Building Inspector nor any other Town board, agency, or official had issued a stop work order or any other notice of any violation of any Town law or any of the Town Board approvals for the Project, including with respect to Lot 301.

50. Attached hereto as **Exhibit T** is a true and correct copy of the minutes of the December 3, 2020 monthly meeting of the Town of Forestburgh Board, which are available on the Town of Forestburgh's website (http://forestburgh.net/wp-content/uploads/2021/09/TB-12-3-2020.docx).

51. Attached hereto as **Exhibit U** is a true and correct copy of minutes of the February 4,

2021 meeting of the Town of Forestburgh, which are available on the Town of Forestburgh's website (http://forestburgh.net/wp-content/uploads/2021/09/TB-2-4-21-spcial-meeting.docx).

52. Attached hereto as **Exhibit V** is a true and correct copy of a letter dated November 23, 2021 from the Town of Forestburgh to the Plaintiffs denying the building permit application for Lot 303 of the Project.

53. Attached hereto as **Exhibit W** is a true and correct copy of an Affirmation of Javid Afzali, Esq. filed on April 29, 2022 in the matter of *Lost Lake Holdings LLC, et al. v, Daniel S. Hogue, Jr., et al.*, in the Supreme Court of New York, County of Sullivan under Index No. E2022-556.

54. Attached as **Exhibit X** is a screenshot (0:31) from a promotional video of Double Diamond, the prior owner of the Project, marketing another property owned by them as "affordable." This video is available on YouTube at https://www.youtube.com/watch?v=3WqrMmJXVnw (last accessed May 8, 2023).

55. This promotional video was shown to the ZBA during the course of my testimony at the August 10, 2022 hearing.

56. Attached hereto as **Exhibit Y** is a true and correct copy of the Declaration of Reservations, Covenants, Easements, Restrictions and Conditions for the Lost Lake Resort and Development dated September 23, 2013.

57. Attached as **Exhibit Z** is a true and correct copy of Appendix E2, "Lost Lake Resort Design Guidelines for Single-Family Homes," of the Lost Lake Resort Draft Environmental Impact Statement, Volume II, dated May 20, 2010, which was made part of the administrative record by the Town of Forestburgh Zoning Board of Appeals

*In The Matter Of The Application Of: Rose Improvement And Lost Lake Holdings LLC,* 3.c DEIS Vol. 2 Appendices Part 1, at 108-153; which is available online on the Town of Forestburgh's website (http://forestburgh.net/wp-content/uploads/1646/71/3c.-DEIS-Vol-2-Appendices-Part-1.pdf).

58. There were never any "2013 Design Guidelines" for the Project, or any adopted Design Guidelines at the time of the approval of the Project by the Town. Only a 2010 <u>draft</u> version of Design Guidelines for the Project had existed, and were never adopted by Double Diamond or ourselves.

59. The "Design Guidelines" for the Project were not adopted until 2021.

60. Attached as **Exhibit AA** is a true and correct copy of the Ruling by the Town of Forestburgh Zoning Board of Appeals on the Petitions for Appeal and Interpretation dated November 15, 2022.

61. Attached hereto as **Exhibit BB** are true and correct copies of the Town of Forestburgh Building Permit Applications for the lots identified as Tax Map ID Numbers 3.C-6-13 #293, 3.C-6-11 #295, 3.C-6-9 #297, 3.C-6-24 #392, 3.C-6-22 #394, 3.C-6-20 #396, 3.C-6-17 #399, 3.C-6-8 #298, 3.C-6-19 #397, 3.C-6-6 #300, 3.C-6-27 #389, 3.C-6-23 #393, 3.C-6-21 #395, 3.C-6-18 #398 of the Project dated January 6, 2022 and submitted by Plaintiffs to the Town.

62. Attached hereto as **Exhibit CC** is a true and correct copy of the Town's denial of the Building Permit applications submitted by Plaintiffs to the Town of Forestburgh on January 14, 2022 for the lots identified as Tax Map ID Nos. 3.C-6-13 #293, 3.C-6-11 #295, 3.C-6-9 #297, 3.C-6-24 #392, 3.C-6-22 #394, 3.C-6-20 #396, 3.C-6-17 #399, 3.C-6-8 #298, 3.C-6-19 #397, 3.C-6-6 #300, 3.C-6-27 #389, 3.C-6-23 #393, 3.C-6-21

#395, 3.C-6-18 #398 in the Project.

63. Attached hereto as **Exhibit DD** is a true and correct copy of an Affirmation of Javid Afzali, Esq. filed on April 8, 2022 in the matter of *Lost Lake Holdings LLC, et al. v, Town of Forestburgh, et al* in the Supreme Court of New York, County of Sullivan under Index No. E2022-321.

64. Attached hereto as **Exhibit EE** is a true and correct copy of an Affidavit of Daniel S. Hogue filed on April 8, 2022 in the matter of *Lost Lake Holdings LLC, et al. v, Town of Forestburgh, et al.,* in the Supreme Court of New York, County of Sullivan under Index No. E2022-321.

65. Attached hereto as **Exhibit FF** is a true and correct copy of draft minutes of the March 3, 2022 meeting of the Town of Forestburgh which contain Resolution 2022-2 of Town Board for Forestburgh Adopting Local Law 2 of 2022, which are Amendments to Escrow Deposits Code of the Town of Forestburgh.

66. Attached hereto as **Exhibit GG** is a true and correct copy of a Petition and Attorney Verification by Kara J. Cavallo, Esq., which contains an attached Schedule A that is a list of real property tax assessments for lots in the Project for 2020-2021, filed on July 31, 2020 in the matter of *Misconos Mazah, LLC, et al. v. The Board of Assessors for the Town of Forestburgh, et al.*, Index No. E2020-1064.

67. Attached hereto as **Exhibit HH** is a true and correct copy of the Order and Judgment dated April 11, 2022 and filed April 25, 2022 in the matter of *Lake Lost Resort, Inc. v. Board of Assessors for the Town of Forestburgh and Town of Forestburgh*, in the Supreme Court of the State of New York, County of Sullivan, Index Nos. 2018-1470, E2019-1571, E2020-1064 and E2021-1243.

68. Attached hereto as **Exhibit II** is a true and correct copy of the Notice of Appeal filed on May 18, 2022 in the matter of *Lake Lost Resort, Inc. v. Board of Assessors for the Town of Forestburgh and Town of Forestburgh*, in the Supreme Court of the State of New York, County of Sullivan, Index Nos. 2018-1470, E2019-1571, E2020-1064 and E2021-1243 and the Appellate Division, 3rd Department, on October 26, 2022.

69. Attached hereto as **Exhibit JJ** is a true and correct copy of the draft minutes of the November 15, 2022 meeting of the Town of Forestburgh Zoning Board of Appeals, which are available on the Town of Forestburgh's website (http://forestburgh.net/wp-content/uploads/2023/01/2022-11-22-Meeting-Minutes-FINAL.pdf).

70. Attached hereto as **Exhibit KK** is a true and correct copy of the Amicus Petition presented by the Hartwood Club in the Plaintiffs' Appeal to the Town of Forestburgh Zoning Board of Appeals dated June 21, 2022.

71. Attached hereto as **Exhibit LL** is a true and correct photograph of the Notice of Violation and Stop Work Order issued by the Town of Forestburgh on January 1, 2023 and posted to the Property.

72. Attached hereto as **Exhibit MM** is a true and correct copy of a letter dated January 27 2023, from the Town of Forestburgh to Plaintiff LLH received by me regarding the Stop Work and Compliance Order for Lot 301 of the Project.

73. When I learned of the Stop Work Order issued on January 1, 2023 by the Town of Forestburgh regarding the building permit for Lot 301, I called the Building Inspector approximately a dozen times over the course of several weeks and also emailed him several times. I never received a response from him until he emailed me on February 17, 2023, six weeks later.

74. On January 24, 2023, I called the Building Department and reached Mr. Gabbard to discuss the Stop Work Order. When I began to speak, he hung up the phone.

75. The construction on the home that was the subject of the January 1, 2023 Stop Work Order issued by the Town of Forestburgh had been completed months earlier, while the building permit was active.

76. Attached hereto as **Exhibit NN** is a true and correct copy of an email I sent to Glenn Gabbard at the Town of Forestburgh on January 17, 2023.

77. Attached hereto as **Exhibit OO** is a true and correct copy of an email I sent to Glenn Gabbard at the Town of Forestburgh on January 20, 2023.

78. Attached hereto as **Exhibit PP** is a true and correct copy of an email I sent to Glenn Gabbard at the Town of Forestburgh on February 15, 2023.

79. Attached hereto as **Exhibit QQ** is a true and correct copy of an email I received from Glenn Gabbard at the Town of Forestburgh on February 17, 2023.

80. Even with the January 1, 2023 Stop Work Order issued by the Town and the ZBA Decision, Plaintiffs were able to continue to build the necessary infrastructure for the Project, including road clearing and installation of utilities and water treatment facilities.

81. Attached hereto as **Exhibit RR** is a true and correct copy of a letter dated February 1, 2023 from the Town of Forestburgh received by Plaintiff LLH regarding another set of Notices of Violation, Stop Work Orders and Compliance Orders for the Project.

82. Attached hereto as **Exhibit SS** is a true and correct copy of the draft minutes of the February 2, 2023 meeting of the Town of Forestburgh Board, which are available on the Town of Forestburgh's website (http://forestburgh.net/wp-

content/uploads/2023/02/TB-2-2-2023.pdf).

83. I attended the February 2, 2023 Town Board meeting. During the course of that meeting, Town Supervisor Dan Hogue stated "Lost Lake is not on the agenda today."

84. The official agenda for the February 2, 2023 meeting did not list the Lost Lake project as an agenda item.

85. Attached hereto as **Exhibit TT** is the Verified Complaint filed in the matter of the *Town of Forestburgh, et al. v. Lost Lake Holdings, LLC, et al.,* in the Supreme Court of New York, County of Sullivan under Index No. E2023-186 on February 3, 2023.

86. Attached hereto as **Exhibit UU** is a true and correct copy of a letter dated November 30, 2022 to the Town of Forestburgh Town Board, which is a Request of the Hartwood Club for the Town Board to Re-Open SEQRA for the Lost Lake PDD Development.

87. Attached hereto as **Exhibit VV** is a SEQRA Notice issued by the Town of Forestburgh dated February 9, 2023 regarding the Preparation of a Supplemental Impact Statement for the LLH Project.

88. Attached hereto as **Exhibit WW** is a true and correct copy of the Town of Forestburgh Resolution 2023-02 dated February 2, 2023.

89. Plaintiffs Lost Lake Holdings LLC and Mishconos Mazah LLC have worked on installing utilities and project infrastructure since the Project was purchased.

90. The Town's February 1, 2023 Stop Work Order prevents LLH from doing critical infrastructure work it would otherwise have carried out, including installation of sewer lines, water lines, access roads, the Project's water treatment plant, and water tanks, as well as the associated infrastructure work.

91. Attached hereto as **Exhibit XX** is a true and correct copy of the draft minutes of the Town of Forestburgh Board meeting of March 30, 2023, which I obtained from the Town's Deputy Clerk, Thresa Collins, and which contains a Resolution adopted of even date entitled "Adopting SEQRA Positive Declaration and Requiring the Preparation of a Supplemental Environmental Impact Statement for the Lost Lake Resort Property Located on Cold Spring Road, Town of Forestburgh."

92. On about February 10, 2022, I had an in-person meeting with Joanne Nagoda, the Town Clerk of the Town of Forestburgh. At that meeting, she told me that the Town community had concerns that the Plaintiffs Lost Lake Holdings LLC and Mishconos Mazah LLC would use one of the amenity buildings in the Project plan as a Yeshiva, which is a traditional Jewish educational institution focused on the study of Rabbinic literature, and that they would try to take the entire Project off the tax rolls.

93. During the same meeting on February 10, 2022, Joanne Nagoda told me that the community is concerned that the Plaintiffs would not build the golf course and that she had never seen Hasids play golf.

94. On September 12, 2022, I had a telephone conversation with a Commissioner of the Town of Forestburgh Fire Department where he told me that most residents of the Town of Forestburgh have a "fear of the bloc vote" controlling the Town and that they compare us to Kiryas Joel and other developments where homes are owned by Hasidic Orthodox Jews.

95. Plaintiffs Lost Lake Holdings LLC and Mishconos Mazah LLC have always intended and continue to intend to build the Project in conformity with the Project approvals.

96. The only amenity to be built in Phase 1 of the Project is the first nine holes of the Project's golf course, which the Plaintiffs Lost Lake Holdings LLC and Mishconos Mazah LLC have always intended to build, and continue to intend to build.

97. I attended the June 23, 2022 Town of Forestburgh Zoning Board of Appeals hearing on the appeal of the denial of building permits for our Project.

98. Immediately after the June 23, 2022 ZBA hearing, I observed the members of the Town of Forestburgh Zoning Board of Appeals secluded together with the Town of Forestburgh's Building Department's special counsel, Meaghan Feenan.

99. The building permit applications conformed to the controlling Declaration of Covenants and Restrictions and Design Guidelines.

100. The building permit applications were even consistent with the provisions of the draft Design Guidelines (drafted in 2010 but never adopted) that were described in the relevant portion of the Findings Statement.

101. Plaintiffs have not installed pavement in any part of the Project.

102. The SEQRA review for the Lost Lake Resort began in 2007 and ended in 2011.

103. Since purchasing the Project in 2020, many individuals have sought to purchase homes in the Project. The vast majority are Orthodox Jews.

104. Orthodox Jewish individuals representing groups of Orthodox Jews have also asked me about purchasing blocks of homes within the Project.

105. Some of those who were seeking to purchase homes in the Project addressed the Board at the Town Board meeting on February 3, 2022, which I attended. This was prior to the Board adopting Local Law No. 1 of 2022 (the Moratorium on Building Permits).

106. Of those people who spoke at the Town Board's February 3, 2022 meeting, five have spoken with me about purchasing homes, and four of those were Orthodox Jews. They each asked the Board not to enact the Moratorium law because they were interested in purchasing a home in the Lost Lake Project.

107. The speakers included (a) my mother, who is a grandmother who downsized her home in Rockland County so that she could live near her children and grandchildren in the Lost Lake project; (b) a then-current Sullivan County resident who had planned to move away but had contacted LLH several times about buying property because he wanted to call Lost Lake home; (c) a parent that had just had a baby the day before and wanted to move his children out of their tiny apartment; and (d) someone looking forward to buying a summer home in Lost Lake.

108. Attached hereto as **Exhibit YY** is a true and correct copy of a posting in the public Facebook group "Sullivan County Post" and some comments to that post.

109. The comments on the post referenced immediately above included "Well maybe if these people weren't lazy freeloading slobs who think EVERYONE should jump when they want People wouldn't have an issue with them making a home in the area, . . . ." I understood "these people" to refer to Orthodox Jews and I found this very offensive, insulting, and stigmatizing to the Orthodox Jewish community.

110. Attached hereto as **Exhibit ZZ** is a true and correct copy of a posting in the public Facebook group "Sullivan County New York News and Politics" and some comments to that post.

111. The comments on the post immediately above included "These people do it all the time they can't come up And assimilate the way we live. . . ." Again, I understood "these

people" to refer to Orthodox Jews and I also found this comment very offensive and insulting.

112. Attached hereto as **Exhibit AAA** is a true and correct copy of a posting in the public Facebook group "Sullivan County Post" and some comments to that post. ID:394; See also Affidavit of Todd W. Price dated May 10, 2023.

113. The comments on the post immediately above included "look what happened in Bloomingburg how corrupt they turned out to be," and "they are all in the same boat. They are the same cult, controlled by the same people." I understood the word "they" to refer to Orthodox Jews and I found these comments offensive and stigmatizing to the Orthodox Jewish community.

114. Attached hereto as **Exhibit BBB** is a true and correct copy of a posting in the public Facebook group "Sullivan County Democrat" and some comments to that post.

115. The comments on the post referenced immediately above included "this will never stop till they own everything in NY might as well call NY New Hasidim York" and "I have no respect for people who steal and cheat that's most of the Hasidic population most Jewish people think they are a cult . . . ." These comments are highly offensive to me as a Hasidic Orthodox Jew.

116. Attached hereto as **Exhibit CCC** is a true and correct copy of a posting in the public Facebook group "Clarkstown - What They Don't Want You to Know" and some comments to that post.

117. The comments on the post immediately above included "I'm switching to being an Hasidic . I mean who's got it better , no taxes , welfare , free everything, cheap housing," "They . . . completely flaunt the law and there [sic] such a dominant voting

block everyone is afraid to call them on it.!!!" These comments are also offensive to me as an Orthodox Jew.

118. Attached hereto as **Exhibit DDD** is a true and correct copy of a posting in the public Facebook group "recordonline.com" and some comments to that post.

119. The comments on the post immediately above included "Here we go again. This is their Modus-operandi!! They do what they want. I have never seen an Orthodox EVER EVER play golf!!" Again, these comments are offensive, insulting, and stigmatizing to the Orthodox Jewish community.

120. Attached hereto as **Exhibit EEE** is a true and correct copy of the draft minutes of the May 28, 2013 meeting of the Town of Forestburgh Board, which I obtained through an October 2021 FOIL request to the Town of Forestburgh.

121. Attached hereto as **Exhibit FFF** is a true and correct copy of an affidavit of Maxx Wolkoff dated January 25, 2021, a former employee of LLH.

122. Attached hereto as **Exhibit GGG** is a true and correct copy of Resolution of The Town Board Granting PDD Approval for the Lost Lake Resort of the Town of Forestburgh, which is available on the Town of Forestburgh's website (http://http://forestburgh.net/wp-content/uploads/1646/71/6.-2011.07.07-PDD-Approval-Resolution.pdf).

123. Attached hereto as **Exhibit HHH** is a true and correct copy of the draft minutes of the December 1, 2022 meeting of the Town of Forestburgh Board, which are available on the Town of Forestburgh's website (http://forestburgh.net/wp-content/uploads/2022/12/TB-12-1-2022.pdf)

124. Attached hereto as **Exhibit III** is a true and correct copy of Local Law No. 1 of 2022 enacted by the Town of Forestburgh, New York on February 3, 2022, which imposed a three-month moratorium on accepting, reviewing, and approving building and land use approval applications requiring escrows within the Town.

125. Attached hereto as **Exhibit JJJ** is a true and correct copy of the transcribed recording of the November 15, 2022 hearing *In The Matter Of The Application Of: Rose Improvement And Lost Lake Holdings LLC*, before the Town of Forestburgh Zoning Board of Appeals.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___June 1___, 2023

_____
Yehuda Miller